THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS J. BROUDER, Defendant-Appellant.

First District (2nd Division)   No. 86—2429

Opinion filed April 12, 1988.

Paul P. Biebel, Jr., Acting Public Defender, of Chicago (Marilyn Martin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Kathleen A. Bom, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

The defendant, Thomas Brouder, was charged with one count of telephone harassment and one count of resisting arrest. Following a jury trial, defendant was acquitted of telephone harassment but found guilty of resisting arrest. The trial court sentenced defendant to one year's conditional discharge conditioned upon 30 days of community service and two fines: a $70 fine and a $20 Violent Crime Victims Assistance Fund (VCA) fine. Defendant appeals. We reverse and remand.

Defendant raises seven contentions on appeal. In view of the fact that we are reversing and remanding this case to the trial court on the basis of jury instructions, we will address only those arguments which are relevant. First, we find that the complaint sufficiently set forth the nature and elements of the resisting arrest charge. Second, we hold that the evidence adduced at trial was sufficient to find defendant guilty beyond a reasonable doubt of resisting arrest. Third,

we find that Officer Niesluchowski's use of the phrase "he resisted us" should not have been admitted into evidence. Fourth, we find that the trial court did not err when it precluded cross-examination of Officer Gordon regarding defendant being a prominent real estate broker in the area and whether Officer Gordon knew that defendant was a Kiwanis leader who had helped to purchase booking equipment for the local police station.

Finally, we reverse and remand the judgment of the trial court on the ground that it was reversible error for the trial court to refuse to give defendant's tendered instruction defining "knowingly" after the jury expressed confusion over the term "knowing resistance."

### I. THE COMPLAINT

The complaint adequately set forth the nature and elements of the resisting arrest charge. Defendant was charged with resisting arrest. The complaint against defendant read as follows:

"Thomas J. Brouder *** committed the offense of Resisting A Peace Officer in that he knowingly resisted the performance by Patrolman Robert W. Gordon, known by him to be a peace officer, of an authorized act, said officer was attempting to make a lawful arrest within the official capacity of said peace officer, to wit, officer advised the defendant that he was under arrest due to a signed complaint, defendant refused to be handcuffed by said officer and had to be bodily pushed down to be restrained while handcuffs were placed on the defendant. This occurred in the Village of Riverside, County of Cook, State of Ill. in violation of Chapter 38 Section 31—1 Illinois Revised Statutes."

After the jury returned a verdict against defendant on the resisting arrest charge, he filed a motion in arrest of judgment. The trial court denied defendant's motion. On appeal, defendant contends that the trial court erred in denying this motion. Specifically, defendant contends that the complaint failed to describe with particularity the acts that constituted resistance or obstruction.

■■ ■ In Illinois, separate rules govern the sufficiency of a complaint first attacked on appeal and one which is attacked by a motion in arrest of judgment. (*People v. Lutz* (1978), 73 Ill. 2d 204, 209-10, 383 N.E.2d 171; *People v. Deal* (1979), 69 Ill. App. 3d 74, 77, 387 N.E.2d 21.) Where a defendant files a timely motion in arrest of judgment, the issue is whether the complaint sufficiently states the necessary elements of the offense set forth in section 111—3(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 111—

3) so that the language of the complaint apprises defendant with reasonable certainty of the precise offense with which he is charged. (*People v. Miles* (1981), 96 Ill. App. 3d 721, 725, 422 N.E.2d 5.) Section 111—3a requires that a charge must: (1) state the name of the offense; (2) cite the statutory provision allegedly violated; (3) set forth the nature and elements of the offense charged; (4) state the date and county of the offense, and (5) state the name of the accused. (Ill. Rev. Stat. 1983, ch. 38, par. 111—3.) "While the cases in this State have stopped short of requiring absolute compliance with each step, they nonetheless require that a charging instrument give notice of the elements of a charge and particularize it sufficiently with allegations of the essential facts to enable the accused to prepare a defense which, if successful, would bar further prosecution for the same offense." *People v. Smith* (1984), 99 Ill. 2d 467, 471, 459 N.E.2d 1357.

Defendant cites two cases to support his position that the complaint against him did not sufficiently set forth the specific acts which led to the resisting arrest charge. (See *People v. Fox* (1983), 117 Ill. App. 3d 1084, 454 N.E.2d 824; *People v. Leach* (1972), 3 Ill. App. 3d 389, 279 N.E.2d 450.) In *Fox*, defendants were charged with obstructing a peace officer. The information charged that defendants committed "the offense of OBSTRUCTING A PEACE OFFICER, in that they then and there knowing Myron Deckard to be a peace officer did knowingly obstruct said officer *by attempting to conceal the whereabouts of Joe L. Pate* after being informed that said officer had a warrant for the arrest of Joe L. Pate." (Emphasis in original.) (*Fox*, 117 Ill. App. 3d at 1085.) In finding that the information failed to state an offense, the trial court granted defendants' motion to dismiss. The State appealed.

On appeal, the issue was whether a charge alleging the offense of obstructing a peace officer must contain language describing the specific physical acts of defendant. In affirming the trial court, the appellate court held that a description of a defendant's physical acts must be alleged and that the phrase "attempting to conceal the whereabouts" did not sufficiently describe the act(s) which formed the basis of the charge. *Fox*, 117 Ill. App. 3d at 1086.

In *Leach*, defendant was charged with resisting a peace officer. The complaint alleged that defendant "committed the offense of Resisting or Obstructing a peace officer in that she knowingly obstructed the performance of ROBERT GALLOWAY." (*Leach*, 3 Ill. App. 3d at 393.) Defendant was convicted of the resisting arrest charge and she appealed.

On appeal, the court found that the complaint did not contain any

allegation describing the physical "resisting" act of defendant. Moreover, the court stated that a complaint which contains a charge solely in the language of the statute is insufficient. In holding that the complaint did not give defendant notice of the crime, the court reversed defendant's conviction. *Leach*, 3 Ill. App. 3d at 395.

■ In the case at bar, the trial court held that the complaint was sufficiently drafted "to inform the defendant of the nature of the offense, to allow him to prepare a defense, and to protect him, his constitutional rights under the double jeopardy provision." We are in agreement with the trial court. The complaint alleged the defendant "refused to be handcuffed by said officer and had to be bodily pushed down to be restrained while handcuffs were placed on the defendant." This language specifies the physical acts which led to defendant's resisting arrest charge. Although we believe that the part of the complaint describing defendant's physical acts could have been more artfully drafted, we feel that the complaint, as it stands now, apprised defendant with reasonable certainty of the offense with which he was charged and is thus sufficient.

## II. SUFFICIENCY OF THE EVIDENCE

The evidence produced at trial was sufficient to establish that defendant was guilty beyond a reasonable doubt of resisting a peace officer. Defendant was charged with resisting a peace officer. In pertinent part, Illinois statutory law provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." Ill. Rev. Stat. 1983, ch. 38, par. 31–1.

■ The statute mandates some physical act by defendant which "imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (*People v. Raby* (1968), 40 Ill. 2d 392, 399, 240 N.E.2d 595, citing *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 959.) It is the general rule in Illinois that the testimony of an officer involved in the arrest, regarding a defendant's behavior at the time of arrest, is sufficient to sustain a conviction of resisting or obstructing a peace officer. (*People v. Greenwood* (1976), 39 Ill. App. 3d 898, 901, 350 N.E.2d 776.) Defendant argues that the testimony of Officers Gordon and Niesluchowski is inconsistent.

Defendant cites an Illinois case to support the proposition that the inconsistent testimony of two peace officers regarding a defendant's

resistance to arrest is insufficient evidence to convict defendant of resisting arrest. (See *City of Pekin v. Ross* (1980), 81 Ill. App. 3d 127, 400 N.E.2d 992.) In view of the vagueness of the officers' testimony, the many contradictions and inconsistencies, and the impeaching evidence offered by the defense, the *Ross* court found that the trial court's conviction of defendant was against the manifest weight of the evidence. (*Ross*, 81 Ill. App. 3d at 131.) The appellate court, therefore, reversed defendant's conviction of resisting a peace officer. *Ross*, 81 Ill. App. 3d at 131.

Contrary to defendant's belief, the facts in the *Ross* case do not "strikingly resemble" the facts in the instant case. The testimony of Officers Gordon and Niesluchowski is not inconsistent. Although the testimony of Officer Gordon and Officer Niesluchowski varies slightly, both officers are in agreement as to the following relevant facts: defendant was informed that his ex-wife had signed a complaint against him; Officer Gordon had advised defendant at least three times that he was under arrest, and defendant had refused to cooperate, insisting that he had an 8 p.m. appointment; after advising defendant for the third time that he was under arrest, Officer Gordon grabbed defendant and sought to handcuff him. Officer Gordon testified that when he began to handcuff defendant, defendant placed his hands apart and waved them in the air and Officer Niesluchowski was compelled to assist Officer Gordon in handcuffing defendant. Officer Niesluchowski testified that when Officer Gordon attempted to handcuff defendant, defendant slugged his hands back and forth and Officer Niesluchowski had to assist in handcuffing defendant. Officer Gordon also testified that it took approximately five minutes from the time that defendant was advised of his rights until the time that defendant was handcuffed. Officer Niesluchowski, on the other hand, testified that it took approximately two to four minutes.

Defendant points out the inconsistencies in the officers' testimony. He argues that Officer Niesluchowski's account that defendant "slugged his hands back and forth" contradicted Officer Gordon's testimony that defendant "waved his hands apart in the air." Furthermore, defendant contends that while Officer Gordon testified that the entire ordeal with defendant took five minutes, Officer Niesluchowski testified that it took only two to four minutes.

■ Minor discrepancies in the testimony of witnesses do not destroy their credibility. (*People v. Rodriguez* (1981), 100 Ill. App. 3d 244, 248-49, 426 N.E.2d 586.) Conflicts in testimony are to be resolved by the fact finder and "the reviewing court will not reverse a conviction unless the evidence is so improbable as to raise a reason-

able doubt of a defendant's guilt." (*Rodriguez*, 100 Ill. App. 3d at 247.) In the instant case, the inconsistencies in the officers' testimony are minor discrepancies. At trial, the jury resolved these discrepancies in favor of the State. Thus, in view of *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, we find that the evidence adduced at trial was sufficient to support defendant's conviction.

### III. OFFICER NIESLUCHOWSKI'S LEGAL CONCLUSION

Officer Niesluchowski's use of the phrase "he resisted us" in his testimony describing his attempt to arrest defendant was a legal conclusion that should not have been admitted into evidence. Defendant claims that he was prejudiced when the trial court allowed Officer Niesluchowski to testify that defendant "resisted" the officers. The State, however, contends that defendant was not prejudiced and that Officer Niesluchowski used the term "resisted" merely to describe defendant's actions.

■ "Error in the admission \*\*\* of evidence is harmless if the facts involved are strongly established by other competent evidence." (*St. Gemme v. Tomlin* (1983), 118 Ill. App. 3d 766, 770, 455 N.E.2d 294; *People v. Duckworth* (1981), 98 Ill. App. 3d 1034, 1037, 424 N.E.2d 1337.) The trial court committed error when it admitted Officer Niesluchowski's legal conclusion into evidence. In the case at bar, there was sufficient testimony from both officers to establish that defendant had resisted arrest. Therefore, we hold that the trial court did, in fact, err in admitting the testimony. However, its admission did not constitute reversible error.

### IV. OFFICER GORDON'S CROSS-EXAMINATION

■ ■ The trial court improperly limited defense counsel's cross-examination of Officer Gordon. The trial court controls the scope and manner of cross-examination. (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 532-33, 453 N.E.2d 849.) Trial court decisions regarding cross-examination will not be disturbed on appeal unless the trial court abused its discretion and such abuse resulted in manifest prejudice to defendant. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 538, 464 N.E.2d 659.) Cross-examination may be used to show a witness' interest, bias, or motive and is subject only to the trial court's discretion to preclude repetitive or unduly harassing questioning. (*People v. Adams* (1967), 36 Ill. 2d 492, 497, 224 N.E.2d 252; *People v. Martinez* (1983), 120 Ill. App. 3d 305, 308, 458 N.E.2d 104; *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837.) Moreover, evidence showing bias must be direct and positive, not remote and un-

certain. *People v. Ware* (1981), 96 Ill. App. 3d 923, 927, 422 N.E.2d 148; *Phillips*, 95 Ill. App. 3d at 1021-22; *People v. Nowak* (1979), 76 Ill. App. 3d 472, 477-78, 395 N.E.2d 28.

In the instant case, defendant argues that the trial court improperly prevented him from revealing the bias of Officer Gordon on cross-examination. The State contends that the trial court acted properly when it restricted the defense attorney's use of repetitive and irrelevant questions during Officer Gordon's cross-examination.

■ On cross-examination, defense counsel asked Officer Gordon whether defendant had informed him that defendant intended to file police harassment charges against Officer Gordon. Officer Gordon answered that yes, he knew. Defense counsel also asked Officer Gordon several questions about the videotape that Officer Gordon took of defendant during the booking stage. The trial court, therefore, permitted defense counsel to question Officer Gordon about the police harassment charges and the videotape.

The trial court, however, did not permit defense counsel to cross-examine Officer Gordon on whether Officer Gordon knew defendant to be a prominent real estate broker in the area or on whether Officer Gordon knew that defendant was a Kiwanis leader who had helped to purchase booking equipment for the local police station. Whether Officer Gordon knew that defendant was a prominent real estate broker and/or that defendant was a Kiwanis leader was not relevant to show bias on the part of Officer Gordon. Therefore, it was not error for the trial court to limit defense counsel's cross-examination of Officer Gordon.

### V. JURY INSTRUCTIONS

Defendant also contends that the trial court committed reversible error when it failed to provide defendant's tendered jury instruction defining "knowingly." After finding defendant not guilty of telephone harassment, the jury informed the court that it was at a definite deadlock on the resisting arrest charge. The jury sent several written questions to the trial judge which indicated that the jury was confused as to the meaning of "knowing resistance."

For example, the jury twice sent this question to the trial judge: "In specific terms, what defines 'knowingly resisting arrest'?" The jury also sent the following written request to the trial judge: "We are confused as to the 'knowingly resistance' to being arrested. Does it mean a mental state of refusing to be arrested and thereby running away, physically fighting? Will a step or two away mean resistance?" The trial judge twice sent back this response: "You have heard all of

the evidence. You have been given the instructions. Continue your deliberations."

Thereafter, defense counsel tendered a jury instruction defining "knowingly" as a mental state. The jury instruction, derived from Illinois Pattern Jury Instructions Criminal, No. 5.02A (2d ed. 1971) stated:

> "A person knows or acts knowingly or with knowledge of: The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct."

The trial court did not rule on whether to admit or deny defense counsel's tendered jury instruction, but reserved its ruling. Before the trial court was able to give its ruling, the jury found defendant guilty of resisting arrest.

When a jury manifests confusion or doubt, it is the trial court's duty to reinstruct on any question of law giving rise to that doubt or confusion. (*People v. Sanders* (1984), 127 Ill. App. 3d 471, 474, 469 N.E.2d 287; *People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 491, 405 N.E.2d 844; *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 1035, 288 N.E.2d 622; *People v. Harmon* (1968), 104 Ill. App. 2d 294, 301, 244 N.E.2d 358.) "This is true even though the jury was initially given proper instructions." *People v. Morris* (1980), 81 Ill. App. 3d 288, 290-91, 401 N.E.2d 284.

In *Morris*, the jury was properly instructed as to the elements of burglary. The State did not offer an accountability instruction, and the jury was therefore not instructed as to accountability. During its deliberations, the jury sent the following written request to the trial judge: "If a person comes into possession of property obtained illegally by another can he be presumed guilty of burglary even though he, himself, may never have illegally entered the building or removed the property?" The trial judge's response was: "Not a proper question! You must decide the case on the instructions as given."

The jury returned with a verdict of guilty against defendant on the burglary charge. On appeal, the judgment of the trial court was reversed and remanded. The appellate court found that once the jury had shown confusion, it was reversible error for the trial court to refuse to provide a proper answer to the jury's question. *Morris*, 81 Ill. App. 3d at 291.

In the case at bar, the State cites two cases in support of the proposition that the term "knowingly" has a plain meaning within the jury's common knowledge and that it is not reversible error for a trial court to refuse to give instructions on the definition of "knowingly."

(See *People v. Masini* (1978), 65 Ill. App. 3d 1011, 1015, 383 N.E.2d 1, *aff'd* (1979), 78 Ill. 2d 17, 397 N.E.2d 1368; *People v. Montgomery* (1974), 18 Ill. App. 3d 828, 833-34, 310 N.E.2d 760.) *Masini* and *Montgomery*, however, can easily be distinguished from the case at bar. Unlike the jury in the present case, the jury in *Masini* never made any requests of the trial judge and never exhibited any doubt or confusion as to its instructions. The issue was whether the trial court's failure to give various instructions *sua sponte* constituted reversible error. The appellate court held that it was not reversible error.

Likewise, in *Montgomery*, the jury never made any requests of the trial court regarding jury instructions. The trial court had properly instructed the jury on all the elements of the crimes with which defendant was charged, on the theory of accountability, and on the affirmative defense of intoxication. On appeal, defendant contended that the trial court's failure to define the terms "intentionally" and "knowingly" made it impossible for the jury to determine defendant's conduct with respect to any ascertainable standard and was thus reversible error. The appellate court disagreed with defendant.

In the instant case, the jury, on several occasions, *specifically requested* the trial court's assistance as to the meaning of "knowing resistance." The trial court provided no direction and told the jury to rely on the instructions that were initially given. Because the jury in the present case demonstrated confusion as to a question of law (the meaning of "knowing resistance"), we hold that the trial court committed reversible error when it refused to provide the jury with defense counsel's tendered instruction defining "knowingly" as a mental state.

In view of the foregoing, the judgment of the circuit court is hereby reversed and the cause is remanded for a new trial.

Reversed and remanded.

BILANDIC and SCARIANO, JJ., concur.