January 28, 1999

No. 5-97-0804

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from

Plaintiff-Appellee, )  Circuit Court of

v. )  Macon County 

DANNY COMAGE, )  No. 97CF377

Defendant-Appellant. )

)  Honorable

)  James A. Hendrian,

)  Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 21, 1997, Danny Comage was charged with unlaw­

ful posses­sion of a con­trolled substance (720 ILCS 570/402(c) (West 1996).  After a jury trial on July 17, 1997, defendant was found guilty and on August 15, 1997, was sentenced to six years in the penitentiary.  

All of the issues in this case revolve around the re­

quire­ment that a defen­dant charged with unlawful possession of a controlled substance possess it knowing­ly (
People v. Harris
, 52 Ill. 2d 558, 560, 288 N.E.2d 385, 386-87 (1972)).  Defen­dant argues, first, that the evi­dence was insuf­fi­cient to support a conviction because this element was not proved beyond a reason­

able doubt; second, that the trial court denied him his consti­tu­

tion­al right to be present at all proceed­ings that involve his substantial rights (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8) when it an­swered the jury's ques­tion regard­ing this element without con­sulting him or his coun­sel; and third, that 

the trial court's answer to the jury ques­tion denied him his consti­tutional right to a fair trial (Ill. Const. 1970, art. I, §8).  Because we find the trial court erred when it answered the jury's question without consulting him or his counsel, we reverse and remand for a new trial.

On January 18, 1997, Decatur police officer Neil Cline stopped defendant, Danny Comage, and took him to police headquar­

ters for questioning in a matter unrelated to this appeal.  Cline's patrol car was searched at police head­quar­ters, and a pipe used for smoking crack cocaine was recovered from under­neath the seat.  Scott Hastings, another Decatur police officer, testi­

fied Comage told the police he had traded some compact discs for crack cocaine earlier that day.  Comage also told Hastings the crack pipe belonged to him and he put it under the seat of the patrol car because he did not want to be charged with posses­sion of drug paraphernalia.

The defense stipu­lat­ed the pipe con­tained cocaine residue.  Comage testified there was nothing visible to indi­cate there was still cocaine in the pipe.  Both Hastings and Cline admit­ted there was no visible cocaine in the pipe, in either powder or rock form.  Defen­dant testi­fied he did not know the pipe con­tained co­caine, and he thought that once the cocaine was burned, it was eliminated.  According to Hastings, Comage told him he did not use the pipe to smoke the cocaine he received that day, and Comage testified he had not used the pipe for almost a month. 

On July 17, 1997, a jury trial was held, and the jury was given a set of instruc­tions which stated, 
inter
 
alia
, that to convict defendant, it would have to find defendant knowingly possessed a substance containing co­caine.  During jury delib­era­

tions, the jury sent a ques­tion to the trial judge, written on the jury instruc­tion itself.  The above element was circled, and the word "know­ingly" was under­lined.  At the bottom of the page, a juror wrote, "Can we have further explana­tion on this para­

graph?"  Beneath this question, the trial judge wrote, "No, give the words their normal meaning.  J.H."  No further record was made of this ques­tion and re­sponse.  The jury re­turned a guilty verdict at 3:30 p.m. 

Defendant presents two closely related arguments.  First, he argues he was denied his consti­tu­tion­al right to a fair trial (Ill. Const. 1970, art. I, §8) when the trial court refused to respond to the jury's question about the word "know­ing­ly" as used in the jury instruc­tions (see 
People v. Oden
, 261 Ill. App. 3d 41, 45-46, 633 N.E.2d 1385, 1389 (1994)) and second that the trial court deprived him of his consti­tution­al right to be present at pro­ceedings that involved his substan­tial rights (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8) by re­sponding to the jury's ques­tion 
ex
 
parte
 (see 
People v. Childs
, 159 Ill. 2d 217, 227, 636 N.E.2d 534, 538-39 (1994)).

A defendant is de­prived of his constitutional right to be present when a judge commu­ni­cates with the jury after the jury has retired to delib­erate, unless the communica­tion is in open court with the defen­dant present.  
Childs
, 159 Ill. 2d at 227, 636 N.E.2d at 538-39.  The trial court erred under 
Childs
.  The State does not dispute that the trial court respond­ed to the jurors' ques­tion without informing defen­dant or his counsel.  The convic­tion may still be af­firmed if the State demon­strates beyond a reason­able doubt that the 
ex
 
parte
 commu­ni­ca­tion was harm­less.  
Childs
, 159 Ill. 2d at 227, 636 N.E.2d at 539.  When the trial court's decision not to answer a jury's question is clearly correct, a defendant is not preju­diced by his absence when the deci­sion was made.  
People v. McDonald
, 168 Ill. 2d 420, 460-61, 660 N.E.2d 832, 850 (1995).  

Therefore, defendant's right to be present turns on the same question as defendant's fair trial argu­ment:  whether the trial court proper­ly refused to explain the use of the word "knowing­ly."  Defendant failed to raise this issue in a posttrial motion.  Normally, this would mean the issue is waived on ap­peal.  
People v. Enoch
, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988).  However, the supreme court has recently held the waiver rule is inapplicable when a defendant is challenging 
ex
 
parte
 communications between a judge and jury, because the basis for the objection is the trial judge's conduct.  
People v. Kliner
, No. 81314, slip op. at 54 (December 3, 1998).  Waiver is partic­u­

larly inappropri­ate here because defendant had no notice of the jury's question until the record was pre­pared for appeal.

When a jury raises an explicit question manifesting juror confusion on a substantive legal issue, the trial court is obligated to respond.  However, a trial court has discretion to refuse to answer and should consider factors including whether the in­struc­tions are readily under­stand­able and suffi­cient­ly explain the relevant law, whether further instruc­tions would serve no useful purpose or would potentially mislead the jury, whether the jury's inquiry involves a question of fact, or whether giving an answer would cause the court to express an opinion that would likely direct a verdict one way or another.  
Childs
, 159 Ill. 2d at 228-29, 636 N.E.2d at 539.

The State argues the instructions already given were legally adequate, noting a court need not define the term "know­

ing­ly" in an origi­nal set of jury in­struc­tions because the term is within the jury's common knowl­edge.  
People v. Powell
, 159 Ill. App. 3d 1005, 1013, 512 N.E.2d 1364, 1370 (1987).  Howev­er, once a jury asks for clari­fica­tion, the ulti­mate issue is not whether the in­struc­tions already given were legally proper, but whether they were clearly under­standable to the jury.  The very fact the jury asked the ques­tion shows at least some jurors did not find the instruc­tions clear as applied to the facts of the case.  
Childs
, 159 Ill. 2d at 231, 636 N.E.2d at 540.  Even when a word or phrase has a plain meaning within the jury's common knowl­edge, the trial court has a duty to in­struct a jury where clari­fi­ca­tion is requested.  
People v. Landwer
, 279 Ill. App. 3d 306, 316, 664 N.E.2d 677, 684 (1996).  

In 
People v. Brouder
, 168 Ill. App. 3d 938, 523 N.E.2d 100 (1988), the defendant was charged with resisting arrest after he waved his arms, making it diffi­cult for officers to handcuff him upon arrest.  An element of the charge was that the defendant's resistance be knowing.  The first dis­trict held the trial court erred by refus­ing to define the word "know­ing" after the jury had twice specif­i­cally request­ed a defini­tion of "know­

ing resis­tance," report­ed its confu­sion regarding that word, and indi­cat­ed it was at a "defi­nite dead­lock."  
Brouder
, 168 Ill. App. 3d at 946, 523 N.E.2d at 105.

Here, as in 
Brouder
, the jury's question related to a substantive issue of law.  The 
Brouder
 court specif­i­cal­ly con­

clud­ed the defini­tion of the term "knowing resistance" was an issue of law for purposes of the 
Childs
 stan­dards.  
Brouder
, 168 Ill. App. 3d at 948, 523 N.E.2d at 106.  Other cases have simi­

lar­ly held an inquiry about the defini­tion of a single word in a legal stan­dard, without relating it to any partic­ular fact of the case, is an issue of law.  
Landwer
, 279 Ill. App. 3d at 316, 664 N.E.2d at 684; 
People v. Kamide
, 254 Ill. App. 3d 67, 72, 626 N.E.2d 337, 341 (1993).  

Initially, 
Brouder
 was held inapplicable in cases, such as this one, where there was a single jury inquiry and no other indication of jury deadlock or confusion.  See 
People v. Waldron
, 219 Ill. App. 3d 1017, 1039-41, 580 N.E.2d 549, 564-65 (1991); 
People v. Wil­liams
, 252 Ill. App. 3d 635, 645, 625 N.E.2d 144, 151 (1993).  However, 
Childs
 then clarified that, in some circum­

stanc­es, a single inquiry, with no more, is enough to demon­strate juror confu­sion.  See 
Childs
, 159 Ill. 2d at 229-30, 636 N.E.2d at 539-40; 
Kamide
, 254 Ill. App. 3d at 70, 626 N.E.2d at 340.  In 
Childs
 and 
Kamide
, the courts looked to the legal complexity of the issue addressed by the question and its significance in light of the facts of the case.  See 
Childs
, 159 Ill. 2d at 231, 636 N.E.2d at 541 (State conced­ed the juror's ques­tion presented an intricate issue); 
Kamide
, 254 Ill. App. 3d at 71, 626 N.E.2d at 341 (jurors' question, relat­ing to the type of alcohol regu­lated by a driving under the influence (DUI) statute, was signif­i­cant in light of expert testi­mo­ny that the defendant's breathalyzer result could have been caused by an asthma inhaler containing a type of alcohol not usually imbibed).  

On the facts of this case, as in 
Brouder
, the defini­

tion of the word "know­ing­ly" could have had a significant effect on the outcome.  Again, the defini­tion of the word "knowledge" is within the knowledge of the average juror.  
Powell
, 159 Ill. App. 3d at 1013, 512 N.E.2d at 1370.  However, an accu­rate de­scription of mental states that are elements of offenses is still one of the most difficult problems in preparing a criminal code.  See 720 ILCS Ann. 5/4-3, Committee Com­ments--1961, at 144 (Smith-Hurd 1993) .

The potential for juror confusion is demonstrated in the State's own statements during oral argument that the "knowl­

edge" element is mea­sured by an objective standard.  This element re­quires defen­dant to be con­scious­ly aware of the exis­tence of the given circum­stance or nature of his conduct (720 ILCS 5/4-5 (West 1996)), in this case possession of cocaine.  This is a subjective standard.  See 
People v. Nash
, 282 Ill. App. 3d 982, 985-86, 669 N.E.2d 353, 356 (1996) ("knowl­edge" for purpos­es of criminal stat­utes is not to be equated with the civil standard requiring defendant "knew or should have known" of crucial fact).

 Wit­ness­es for both the defen­dant and the State testi­

fied the cocaine was not visible in the pipe.  Defendant's testimo­ny that he had not used the pipe for a month, and he did not believe any cocaine was left in the pipe, was unrebutted.  The jury could have be­lieved it was enough defendant knowingly possessed the pipe, con­sciously knew of there being cocaine in the pipe at some point in the past, or should have known the pipe then contained cocaine, even if defen­dant was not con­scious­ly aware the pipe con­tained co­caine on or around the date for which he was charged.

In determining whether a response to the jury's inquiry would have helped, a significant factor is what that response would have been.  See 
People v. Gramc
, 271 Ill. App. 3d 282, 287, 647 N.E.2d 1052, 1055 (1995).  The Illi­nois Pattern Jury In­struc­

tions provide a defini­tion for the word "know­ing­ly," which states, in pertinent part:

"A person [acts know­ing­ly with regard to] the nature or at­tendant circum­stances of his conduct when he is consciously aware that his conduct is of such a nature or that such circum­stances exist.  Knowl­edge of a mate­rial fact in­cludes aware­ness of the substan­tial proba­bility that such fact exists."  Illinois Patter Jury Instructions, Criminal, No. 5.01B[1], at 104 (3d ed. 1992) (here­inaf­ter IPI Criminal 3d)(definitional instruction on knowledge).

This defini­tion was pre­pared in re­sponse to 
Brouder
, and primar­i­

ly for re­sponse to jury inqui­ries.  IPI Criminal 3d No. 5.01B[1], Commit­tee Comment, at 104 (declining to comment on whether the in­struc­tion should be given routinely where no jury inquiries have been made).  This instruction, IPI Criminal 3d No. 5.01B, was not includ­ed in the instructions given by the trial court in this case.

For all of the above reasons, we reverse the decision of the trial court and remand this case for a new trial.  We do not address the sufficiency of the evidence to support a convic­

tion had the court properly responded to the jury's question.

Reversed and remanded.

KNECHT, P.J., and GARMAN, J., concur.