THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANNY COMAGE, Defendant-Appellant.

Fourth District    No. 5—97—0804

Argued December 17, 1998.—Opinion filed January 28, 1999.—Modified on denial of rehearing March 11, 1999.

Daniel M. Kirwan and Paige Clark Strawn (argued), both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Timothy J. Londrigan (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 21, 1997, Danny Comage was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)). After a jury trial on July 17, 1997, defendant was found guilty and on August 15, 1997, was sentenced to six years in the penitentiary.

All of the issues in this case revolve around the requirement that a defendant charged with unlawful possession of a controlled substance possess it knowingly (*People v. Harris*, 52 Ill. 2d 558, 560, 288 N.E.2d 385, 386-87 (1972)). Defendant argues, first, that the evidence was insufficient to support a conviction because this element was not proved beyond a reasonable doubt; second, that the trial court denied him his constitutional right to be present at all proceedings that involve his substantial rights (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) when it answered the jury's question regarding this element without consulting him or his counsel; and third, that the trial court's answer to the jury question denied him his constitutional right to a fair trial (Ill. Const. 1970, art. I, § 8). Because we find the trial court erred when it answered the jury's question without consulting him or his counsel, we reverse and remand for a new trial.

On January 18, 1997, Decatur police officer Neil Cline stopped defendant, Danny Comage, and took him to police headquarters for questioning in a matter unrelated to this appeal. Cline's patrol car was searched at police headquarters, and a pipe used for smoking crack cocaine was recovered from underneath the seat. Scott Hastings, another Decatur police officer, testified Comage told the police he had traded some compact discs for crack cocaine earlier that day. Comage also told Hastings the crack pipe belonged to him and he put it under the seat of the patrol car because he did not want to be charged with possession of drug paraphernalia.

The defense stipulated the pipe contained cocaine residue. Comage testified there was nothing visible to indicate there was still cocaine in the pipe. Both Hastings and Cline admitted there was no visible cocaine in the pipe, in either powder or rock form. Defendant testified he did not know the pipe contained cocaine, and he thought that once the cocaine was burned, it was eliminated. According to Hastings, Comage told him he did not use the pipe to smoke the cocaine he received that day, and Comage testified he had not used the pipe for almost a month.

On July 17, 1997, a jury trial was held, and the jury was given a

set of instructions which stated, *inter alia*, that to convict defendant, it would have to find defendant knowingly possessed a substance containing cocaine. During jury deliberations, the jury sent a question to the trial judge, written on the jury instruction itself. The above element was circled, and the word "knowingly" was underlined. At the bottom of the page, a juror wrote, "Can we have further explanation on this paragraph?" Beneath this question, the trial judge wrote, "No, give the words their normal meaning. J.H." No further record was made of this question and response. The jury returned a guilty verdict at 3:30 p.m.

Defendant presents two closely related arguments. First, he argues he was denied his constitutional right to a fair trial (Ill. Const. 1970, art. I, § 8) when the trial court refused to respond to the jury's question about the word "knowingly" as used in the jury instructions (see *People v. Oden*, 261 Ill. App. 3d 41, 45-46, 633 N.E.2d 1385, 1389 (1994)) and second that the trial court deprived him of his constitutional right to be present at proceedings that involved his substantial rights (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) by responding to the jury's question *ex parte* (see *People v. Childs*, 159 Ill. 2d 217, 227, 636 N.E.2d 534, 538-39 (1994)).

■ A defendant is deprived of his constitutional right to be present when a judge communicates with the jury after the jury has retired to deliberate, unless the communication is in open court with the defendant present. *Childs*, 159 Ill. 2d at 227, 636 N.E.2d at 538-39. The trial court erred under *Childs*. The State does not dispute that the trial court responded to the jurors' question without informing defendant or his counsel. The conviction may still be affirmed if the State demonstrates beyond a reasonable doubt that the *ex parte* communication was harmless. *Childs*, 159 Ill. 2d at 227, 636 N.E.2d at 539. When the trial court's decision not to answer a jury's question is clearly correct, a defendant is not prejudiced by his absence when the decision was made. *People v. McDonald*, 168 Ill. 2d 420, 460-61, 660 N.E.2d 832, 850 (1995).

■ Therefore, defendant's right to be present turns on the same question as defendant's fair trial argument: whether the trial court properly refused to explain the use of the word "knowingly." Defendant failed to raise this issue in a posttrial motion. Normally, this would mean the issue is waived on appeal. *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988). However, the supreme court has recently held the waiver rule is inapplicable when a defendant is challenging *ex parte* communications between a judge and jury, because the basis for the objection is the trial judge's conduct. *People v. Kliner*, 185 Ill. 2d 81, 161-62 (1998). Waiver is particularly inappropriate here

because defendant had no notice of the jury's question until the record was prepared for appeal.

■ When a jury raises an explicit question manifesting juror confusion on a substantive legal issue, the trial court is obligated to respond. However, a trial court has discretion to refuse to answer and should consider factors including whether the instructions are readily understandable and sufficiently explain the relevant law, whether further instructions would serve no useful purpose or would potentially mislead the jury, whether the jury's inquiry involves a question of fact, or whether giving an answer would cause the court to express an opinion that would likely direct a verdict one way or another. *Childs*, 159 Ill. 2d at 228-29, 636 N.E.2d at 539.

■ The State argues the instructions already given were legally adequate, noting a court need not define the term "knowingly" in an original set of jury instructions because the term is within the jury's common knowledge. *People v. Powell*, 159 Ill. App. 3d 1005, 1013, 512 N.E.2d 1364, 1370 (1987). However, once a jury asks for clarification, the ultimate issue is not whether the instructions already given were legally proper, but whether they were clearly understandable to the jury. The very fact the jury asked the question shows at least some jurors did not find the instructions clear as applied to the facts of the case. *Childs*, 159 Ill. 2d at 231, 636 N.E.2d at 540. Even when a word or phrase has a plain meaning within the jury's common knowledge, the trial court has a duty to instruct a jury where clarification is requested. *People v. Landwer*, 279 Ill. App. 3d 306, 316, 664 N.E.2d 677, 684 (1996).

In *People v. Brouder*, 168 Ill. App. 3d 938, 523 N.E.2d 100 (1988), the defendant was charged with resisting arrest after he waved his arms, making it difficult for officers to handcuff him upon arrest. An element of the charge was that the defendant's resistance be knowing. The first district held the trial court erred by refusing to define the word "knowing" after the jury had twice specifically requested a definition of "knowing resistance," reported its confusion regarding that word, and indicated it was at a "definite deadlock." *Brouder*, 168 Ill. App. 3d at 946, 523 N.E.2d at 105.

Here, as in *Brouder*, the jury's question related to a substantive issue of law. The *Brouder* court specifically concluded the definition of the term "knowing resistance" was an issue of law for purposes of the *Childs* standards. *Brouder*, 168 Ill. App. 3d at 948, 523 N.E.2d at 106. Other cases have similarly held an inquiry about the definition of a single word in a legal standard, without relating it to any particular fact of the case, is an issue of law. *Landwer*, 279 Ill. App. 3d at 316, 664 N.E.2d at 684; *People v. Kamide*, 254 Ill. App. 3d 67, 72, 626 N.E.2d 337, 341 (1993).

■ Initially, *Brouder* was held inapplicable in cases, such as this one, where there was a single jury inquiry and no other indication of jury deadlock or confusion. See *People v. Waldron*, 219 Ill. App. 3d 1017, 1039-41, 580 N.E.2d 549, 564-65 (1991); *People v. Williams*, 252 Ill. App. 3d 635, 645, 625 N.E.2d 144, 151 (1993). However, *Childs* then clarified that, in some circumstances, a single inquiry, with no more, is enough to demonstrate juror confusion. See *Childs*, 159 Ill. 2d at 229-30, 636 N.E.2d at 539-40; *Kamide*, 254 Ill. App. 3d at 70, 626 N.E.2d at 340. In *Childs* and *Kamide*, the courts looked to the legal complexity of the issue addressed by the question and its significance in light of the facts of the case. See *Childs*, 159 Ill. 2d at 231, 636 N.E.2d at 541 (State conceded the juror's question presented an intricate issue); *Kamide*, 254 Ill. App. 3d at 71, 626 N.E.2d at 341 (jurors' question, relating to the type of alcohol regulated by a driving under the influence (DUI) statute, was significant in light of expert testimony that the defendant's breathalyzer result could have been caused by an asthma inhaler containing a type of alcohol not usually imbibed).

■ On the facts of this case, as in *Brouder*, the definition of the word "knowingly" could have had a significant effect on the outcome. Again, the definition of the word "knowledge" is within the knowledge of the average juror. *Powell*, 159 Ill. App. 3d at 1013, 512 N.E.2d at 1370. However, an accurate description of mental states that are elements of offenses is still one of the most difficult problems in preparing a criminal code. See 720 ILCS Ann. 5/4—3, Committee Comments—1961, at 144 (Smith-Hurd 1993).

The potential for juror confusion is demonstrated in the State's own statements during oral argument that the "knowledge" element is measured by an objective standard. This element requires defendant to be consciously aware of the existence of the given circumstance or nature of his conduct (720 ILCS 5/4—5 (West 1996)), in this case possession of cocaine. This is a subjective standard. See *People v. Nash*, 282 Ill. App. 3d 982, 985-86, 669 N.E.2d 353, 356 (1996) ("knowledge" for purposes of criminal statutes is not to be equated with the civil standard requiring defendant "knew or should have known" of crucial fact).

Witnesses for both the defendant and the State testified the cocaine was not visible in the pipe. Defendant's testimony that he had not used the pipe for a month, and he did not believe any cocaine was left in the pipe, was unrebutted. The jury could have believed it was enough defendant knowingly possessed the pipe, consciously knew of there being cocaine in the pipe at some point in the past, or should have known the pipe then contained cocaine, even if defendant was

not consciously aware the pipe contained cocaine on or around the date for which he was charged.

In determining whether a response to the jury's inquiry would have helped, a significant factor is what that response would have been. See *People v. Gramc*, 271 Ill. App. 3d 282, 287, 647 N.E.2d 1052, 1055 (1995). The Illinois Pattern Jury Instructions provide a definition for the word "knowingly," which states, in pertinent part:

> "A person [acts knowingly with regard to] the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of such a nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists." Illinois Pattern Jury Instructions, Criminal, No. 5.01B[1], at 104 (3d ed. 1992) (hereinafter IPI Criminal 3d) (definitional instruction on knowledge).

This definition was prepared in response to *Brouder*, and primarily for response to jury inquiries. IPI Criminal 3d No. 5.01B[1], Committee Comment, at 104 (declining to comment on whether the instruction should be given routinely where no jury inquiries have been made). This instruction, IPI Criminal 3d No. 5.01B, was not included in the instructions given by the trial court in this case.

■■ ■ For all of the above reasons, we reverse the decision of the trial court and remand this case for a new trial. In light of our decision to remand this case for a new trial, double jeopardy requires that we address defendant's challenge to the sufficiency of the evidence. *People v. Digirolamo*, 179 Ill. 2d 24, 42, 688 N.E.2d 116, 125 (1997). There is sufficient evidence to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Oaks*, 169 Ill. 2d 409, 457-58, 662 N.E.2d 1328, 1349-50 (1996); *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). We reject defendant's claim that the evidence here was not sufficient to prove him guilty beyond a reasonable doubt. Defendant admitted using the crack pipe a month before he was arrested. He also admitted smoking crack earlier the day he was arrested. While defendant testified he did not use his own pipe earlier that day, the jury was not required to believe this aspect of defendant's testimony. The jury could reasonably conclude that, unless exceptional measures were taken, the defendant knew residue from the crack cocaine would remain, and his prior knowing possession was continuing. The fact the residue was found in

defendant's drug paraphernalia demonstrates defendant's possession was not innocent or accidental.

Reversed and remanded.

KNECHT, P.J., and GARMAN, J., concur.